IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DAN THOMASTON, AS NATURAL      *
FATHER AND NEXT FRIEND OF      *
M.T., a minor,                 *
                               *
     Plaintiff,                *
                               *
vs.                            *     CIVIL ACTION NO. 18-00372-KD-B
                               *
BALDWIN COUNTY BOARD OF        *
EDUCATION, *et al.*,           *
                               *
     Defendants.               *

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants Eddie Tyler,
Baldwin County Board of Education, Cecil Christenberry, Shannon
Cauley, and David Cox's motions to dismiss and supporting
memorandums (Docs. 6-9). The motions, which have been fully
briefed, have been referred to the undersigned Magistrate Judge
for entry of a report and recommendation pursuant to 28 U.S.C. §
636(b)(1)(B) and S.D. Ala. CivLR 72(a)(2)(S). Upon consideration
of all matters presented, the undersigned RECOMMENDS, for the
reasons stated herein, that Defendants' motions be **GRANTED**.

### I.   PROCEDURAL AND FACTUAL BACKGROUND[1]

Plaintiff Dan Thomaston, as "father and next friend of M.T.,
a female minor child" ("Plaintiff"), commenced this action on

---

[1]   For purposes of resolving Defendants' motions to dismiss, the
Court accepts as true the facts alleged in Plaintiff's complaint.

August 28, 2018.  (Doc. 1).  In his complaint, Plaintiff asserts a Title IX claim for student-on-student sexual harassment against Defendants Baldwin County Board of Education ("Board of Education"); Eddie Tyler ("Tyler"), the Superintendent of the Board of Education; Kyle Nobles ("Nobles"), the former principal of Bay Minette Middle School; Cecil Christenberry ("Christenberry"), the President of the Board of Education; Shannon Cauley ("Cauley"), the Vice President of the Board of Education; David Cox ("Cox"), a member of the Board of Education; and Lisa Kreps ("Kreps"), assistant principal at Bay Minette Middle School.[2]  (Id.).

According to Plaintiff, M.T. had just turned thirteen years old and was starting her eighth-grade year at Bay Minette Middle School in 2016.  (Id. at ¶10).  On August 28, 2016, a male student made up a rumor that M.T. "had 'fucked' five different boys" and spread this rumor throughout the school, including involving other students and having them "participate in false malicious gossip." (Id. at ¶11).  M.T. heard the rumor and became very upset.  (Id.). That day, Kreps, the school's assistant principal, called M.T.'s mother and advised her of the incident.  (Id. at ¶12).  M.T.'s mother immediately went to the school and met with Nobles, the principal, who told her he would "take care of it."  (Id.).

_____

[2]    Plaintiff has not effected service of process on Nobles or Kreps.

2

Nobles questioned the male student, who "openly admitted that he did it" and stated that he spread the rumor because M.T. "'deserved it,' even thought [sic] it wasn't true." (Id. at ¶13). Despite his assurances that he would "take care of it," Nobles "took no corrective action" to stop or refute the false rumor. (Id. at ¶14). The male student was not disciplined, his parents were not notified of his actions, no efforts were made to rehabilitate M.T.'s reputation, and no "protective efforts, or otherwise corrective statements or announcements were made regarding the falsity of the rumors[.]" (Id.).

On September 5, 2016, "it was discovered" that the male student was falsely telling other students that M.T. had sent naked pictures of herself to male classmates. (Id. at ¶15). This was reported to Nobles, who again took no corrective action. (Id.). "After Christmas break," the male student "started the rumors back up about M.T." by telling other students that she was having sex with someone, and the rumors "escalated into a fight between two boys." (Id. at ¶16). Again, the school took no corrective action. (Id.). According to Plaintiff, the "bullying continued with one boy falsely telling others that he was beaten up because he slept with M.T." (Id. at ¶17). No school official "made any effort to stop the well-known bullying." (Id.).

Plaintiff alleges that as a result of "the relentless and unchecked bullying[,]" M.T. suffered "devastating public

humiliation" and "extreme emotional and psychological distress" with accompanying "physical manifestations[.]" (<u>Id.</u>). According to Plaintiff, M.T. is a special education student who, prior to the bullying, "was a normal, confident, well-rounded child" who was academically successful and participated in a number of sports and other extracurricular activities. (<u>Id.</u> at ¶18). However, "the bullying has destroyed her life with severe physical/medical manifestations." (<u>Id.</u> at ¶19). M.T. withdrew from school and became a home school student. (<u>Id.</u>).

Plaintiff alleges that the "'student on student' or peer" harassment of M.T. "was so severe, pervasive, and objectively offensive that it effectively barred her access to her right to an education." (<u>Id.</u> at ¶20). In the sole count of the complaint, Plaintiff asserts "that the Defendants, including the principal and other staff members, were guilty of deliberate indifference to the sexual bullying" of M.T. by other students, which "created an intimidating, hostile, offensive and abusive school environment" in violation of Title IX. (<u>Id.</u> at ¶21). Plaintiff seeks compensatory and punitive damages, declaratory and injunctive relief, and costs and attorney's fees. (<u>Id.</u> at p. 5).

Defendants seek the dismissal of Plaintiff's Title IX claims pursuant to Rule 12(b)(6), for failure to state a claim. (Docs. 6-9). The motions have been fully briefed and are now ready for resolution.

## II.  **STANDARD OF REVIEW**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a motion to dismiss an action on the ground that the allegations in the complaint fail to state a claim upon which relief can be granted.  On such a motion, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Little v. City of N. Miami, 805 F.2d 962, 965 (11th Cir. 1986) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).  "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting GSW, Inc. v. Long Cnty., 999 F.2d 1508, 1510 (11th Cir. 1993)). The court must draw "all reasonable inferences in the plaintiff's favor." St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002).

However, the court is not required to accept a plaintiff's legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The U.S. Supreme Court has suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether

they plausibly give rise to an entitlement to relief.'" Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 556 U.S. at 664). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." Id. (quoting Iqbal, 556 U.S. at 682).

Rule 12(b)(6) is read in consideration of Federal Rule of Civil Procedure 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Although Rule 8 does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. To survive a motion to dismiss, a complaint must state on its face a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Unless a plaintiff has "nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." Twombly, 550 U.S. at 570. "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S at 678 (quoting <u>Twombly</u>, 550 U.S at 556).

**III. <u>ANALYSIS</u>**

Title IX is a federal statute that prohibits gender discrimination in education. It provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a). Sexual harassment is a form of gender discrimination under Title IX. <u>Williams v. Bd. of Regents of Univ. Sys. of Ga.</u>, 477 F.3d 1282, 1293 (11th Cir. 2007). The Supreme Court has recognized that a plaintiff may bring a private cause of action under Title IX based upon a school's deliberate indifference to student-on-student gender-based harassment. <u>See</u> <u>Davis v. Monroe Cnty. Bd. of Educ.</u>, 526 U.S. 629, 646-47 (1999). A plaintiff seeking to recover for a Title IX violation based on student-on-student sexual harassment must prove five elements. <u>Hill v. Cundiff</u>, 797 F.3d 948, 970 (11th Cir. 2015) (citing <u>Williams</u>, 477 F.3d at 1292-99).[3]

---

[3]     The <u>Hill</u> court noted that, in <u>Williams</u>, the test was described as comprising four elements, with the fourth element containing two parts. However, the <u>Hill</u> court rearranged its discussion of the test's elements and applied it as a five-element test. <u>See</u> <u>Hill</u>, 797 F.3d at 970 n.11.

First, the defendant must be a Title IX funding recipient. Second, an "appropriate person" must have actual knowledge of the alleged discrimination or harassment. Third, the discrimination or harassment—of which the funding recipient had actual knowledge under element two—must be "severe, pervasive, and objectively offensive." Fourth, the plaintiff must prove "the funding recipient act[ed] with deliberate indifference to known acts of harassment in its programs or activities." Fifth, the plaintiff must demonstrate the discrimination or harassment "effectively barred the victim's access to an educational opportunity or benefit."

Hill, 797 F.3d at 970 (citations omitted). "The standard for student-on-student sexual harassment claims is far more rigorous than a claim for teacher-on-student harassment." Doe v. Univ. of Ala. in Huntsville, 177 F. Supp. 3d 1380, 1392-93 (N.D. Ala. 2016) (citing Davis, 526 U.S. at 650-53).

### A. Title IX Does Not Permit Claims Against Individual School Officials.

Defendants first argue that Plaintiff's claims against the superintendent and board members, in either their individual or official capacities, are not permitted under Title IX; therefore, they are due to be dismissed as a matter of law. (Doc. 7 at 2-4; Doc. 9 at 3-4). "Title IX does not allow claims against individual school officials; only funding recipients can be held liable for Title IX violations." Williams, 477 F.3d at 1300. As Defendants note, Plaintiff's complaint fails to specify whether his Title IX claims are being brought against the school officials in their individual or official capacities. (See Doc. 1). Nor does

Plaintiff allege that any Defendant is a "funding recipient" for the purposes of Title IX. (See id.). Regardless of whether Plaintiff's Title IX claims are made against the school officials in their individual or official capacities, Title IX does not allow claims against individual school officials. Only "funding recipients" can be held liabile under Title IX; thus, Plaintiff's Title IX claims against the individual Defendants are subject to dismissal. See Stinson v. Montgomery Cnty Bd. of Educ., 365 F. Supp. 3d 1233, 1239 n.4 (M.D. Ala. Feb. 5, 2019) ("Title IX does not allow claims against individual school officials; only funding recipients can be held liable for Title IX violations.") (quoting Williams, 477 F.3d at 1300); Greenwell v. Univ. of Ala. Bd. of Trs., 2012 U.S. Dist. LEXIS 118917, at *41-42, 2012 WL 3637768, at *12 (N.D. Ala. Aug. 22, 2012) ("[T]he court is not aware of (nor has Plaintiff provided) any cases in this Circuit that have permitted a Title IX claim to proceed against an individual in his official capacity. . . . Although the Eleventh Circuit [in Williams] did not address the difference—if any—between pleading a Title IX claim against individuals in their official and individual capacities, the court construes that case (as well as the other cases that have barred Title IX claims against individuals) as holding that individuals cannot be sued under Title IX in any capacity.") (emphasis in original); Pinkston v. Univ. of S. Fla. Bd. of Trs., 2019 U.S. Dist. LEXIS 51153, at *13, 2019 WL

1383467, at *5 (M.D. Fla. Mar. 27, 2019) ("[T]he Title IX claim
against Eisenberg, Genshaft, Larsen, and Merkler is dismissed,
regardless of whether the claim was brought against them in their
official or individual capacities."); Weissenbach v. Tuscaloosa
Cnty. Sch. Sys., 2018 U.S. Dist. LEXIS 1912489, at *24-27, 2018 WL
5848047, at *8 (N.D. Ala. Nov. 8, 2018). Accordingly, Plaintiff's
Title IX claims against Defendants Tyler, Nobles, Christenberry,
Cauley, Cox, and Kreps are due to be dismissed.[4]

### B. Defendants' Motion to Dismiss Plaintiff's Title IX Claims Against the Baldwin County Board of Education.

Defendants argue that Plaintiff's complaint fails to state a
claim against the Board of Education for student-on-student
harassment under Title IX, for four reasons. First, Defendants
assert that Plaintiff has failed to allege that M.T.'s harassment
was motivated by gender or because of M.T.'s sex. (Doc. 9 at 5-
7). Second, Defendants contend that Plaintiff's allegations fail
to show that the alleged harassment was sufficiently severe,
pervasive, and objectively offensive to support a Title IX claim.

---

[4]    In his response brief, Plaintiff states that "[t]he argument
that Title IX is enforceable against institutions and programs
that receive federal funds, but does not authorize suits against
individuals is well taken by Plaintiff. [Plaintiff] would,
therefore respectfully request leave of this Court, and would
herein, move to amend the complaint to add a proper claims [sic]
under 42 USC §1983 which allows equal protection claims against
individuals and municipalities." (Doc. 19 at 2) (internal citation
omitted). However, Plaintiff has not filed a proposed amendment;
thus, the Court cannot assess whether or not such an amendment
would be futile.

(Id. at 7-9).  Third, Defendants argue that Plaintiff's allegations fail to demonstrate that the Board of Education had actual knowledge of severe and pervasive harassment.  (Id. at 9-11). Fourth, Defendants maintain that Plaintiff has failed to show that the Board of Education acted with deliberate indifference to the alleged harassment.  (Id. at 11-12).  Defendants also assert that Plaintiff's claim for punitive damages must be dismissed, because punitive damages are not available in Title IX lawsuits.  (Id. at 13).  The Court will address each of these arguments below.

### i. Plaintiff's Complaint Plausibly Alleges Sex-Based Discrimination.

Defendants maintain that Plaintiff's complaint fails to allege that the harassment or bullying was motivated by gender or because of M.T.'s sex.  (Id. at 5-7).  According to Defendants, the complaint indicates that the male student spread false rumors not based on sex but rather because of personal animus; "because, 'she deserved it,' even thought [sic] it wasn't true."  (Id. at 6) (citing Doc. 1 at ¶13).  Plaintiff's response does not directly address this argument, but Plaintiff contends that his complaint has adequately pled the elements of a Title IX claim for student-on-student harassment.  (See Doc. 19 at 3-6).

As noted *supra*, an educational institution may be held liable under Title IX for student-on-student harassment if it is "deliberately indifferent to sexual harassment, of which [it has]

actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." Davis, 526 U.S. at 650.

In GP v. Lee Cnty. Sch. Bd., 737 F. App'x 910 (11th Cir. 2018), the Eleventh Circuit observed that "a plaintiff may bring a private action under IX based upon a school's deliberate indifference to student-on-student *gender-based* harassment." Id. at 914 (emphasis added) (citation omitted). Likewise, in Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist., 647 F.3d 156 (5th Cir. 2011), the Fifth Circuit held that to be actionable, a Title IX claim must be based on one's gender. Id. at 165 ("The offensive behavior, however, must still be based on sex, per the words of title IX, and 'not merely tinged with offensive sexual connotations.'"); see also Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 66 (1st Cir. 2002) ("Discrimination on the basis of sex is the sine qua non of a Title IX sexual harassment case, and a failure to plead that element is fatal."); Nungesser v. Columbia Univ., 244 F. Supp. 3d 345, 362-63 (S.D.N.Y. 2017) ("In order to be considered gender-based harassment, the harassing conduct must 'support an inference of discrimination on the basis of sex.'") (citation omitted), appeal withdrawn, 2017 WL 4404575 (2d Cir. July 10, 2017); Patenaude v. Salmon River Cent. Sch. Dist., 2005 U.S. Dist. LEXIS 29066, at *17, 2005 WL 6152380, at *5 (N.D.N.Y.

Feb. 16, 2005) ("In other words, was Plaintiff being harassed because of her gender or for some other reason?").

Here, Plaintiff has alleged that a male student repeatedly spread false rumors that M.T. had engaged in sexual intercourse with a number of different boys and that she had sent naked pictures of herself to male classmates. (Doc. 1 at ¶¶ 11, 15, 16). Plaintiff has further alleged that, when first questioned about this behavior, the male student stated that he did it because "she deserved it[.]" (Id. at ¶13). Plaintiff also alleged that this "bullying" was "of a sexual nature[.]" (Id. at ¶21).

The Court notes that "'there is no singular means of establishing the discriminatory aspect of sexual harassment. So long as the plaintiff demonstrates in some manner that [she] would not have been treated in the same way had [she] been a [man], [she] has proven sex discrimination.'" Davis v. Carmel Clay Sch., 2013 U.S. Dist. LEXIS 141888, at *26, 2013 WL 5487340, at *9 (S.D. Ind. Sept. 30, 2013) (quoting Shepherd v. Slater Steels Corp., 168 F.3d 998, 1009 (7th Cir. 1999)), aff'd in part, 570 F. App'x 602 (7th Cir. 2014). After reviewing Plaintiff's factual allegations, including the allegations that M.T.'s male harasser repeatedly spread false rumors of her sexual promiscuity and told other students that M.T. had sent naked pictures of herself to other boys in school, in the light most favorable to Plaintiff, the Court finds that a gender-based animus can be inferred from the sexual

13

nature of the false rumors.   Accordingly, Defendants' motion to dismiss Plaintiff's Title IX claim against the Board of Education on this basis is due to be denied.

### ii. Plaintiff Has Not Plausibly Alleged Harassment that was Sufficiently Severe, Pervasive, and Objectively Offensive to Support a Title IX Peer Harassment Claim.

Defendants further argue that Plaintiff's allegations do not support a Title IX claim because the complaint fails to allege any conduct on the part of her fellow students that is severe, pervasive, or objectively offensive.  (Doc. 9 at 7-9).  According to Defendants, while the rumors Plaintiff alleges M.T. was subjected to may have been "humiliating and offensive," the conduct alleged was not sufficiently severe and pervasive to rise to the level of actionable sexual harassment.  (Id. at 8).  Plaintiff counters that whether the harassment is "sufficiently severe" requires a factual determination and that "[a] reasonable jury could certainly find . . . that the harassment suffered by [M.T.] was severe, easily sufficient to maintain a claim under Title IX." (Doc. 19 at 3).

As noted *supra*, " a plaintiff must establish sexual harassment . . . that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities."  Davis,

526 U.S. at 651. "Whether gender oriented conduct rises to the level of actionable harassment often depends on a constellation of surrounding circumstances, expectations, and relationships, including, but not limited to, the ages of the harasser and victim, and the number of individuals involved." Hawkins v. Sarasota Cnty. Sch. Bd., 322 F.3d 1279, 1288 (11th Cir. 2003). "The relationship between the harasser and the victim necessarily affects the extent to which the misconduct can be said to breach Title IX's guarantee of equal access to educational benefits and to have a systemic effect on a program or activity." Davis, 526 U.S. at 653.

> When interacting with each other, children often exhibit behavior that would be wholly unacceptable between adults. The real world of school discipline is a rough-and-tumble place where students practice newly learned vulgarities, erupt with anger, tease and embarrass each other, share offensive notes, flirt, push and shove in the halls, grab and offend. In the school setting, students often engage in insults, teasing, shoving, and gender-specific conduct that is upsetting to the student subjected to it. Damages are not available for simple acts of teasing and mere name-calling among school children even where these comments target differences in gender.

Hawkins, 322 F.3d at 1288 (internal quotation marks and citations omitted). In recognition of "the practical realities of responding to student behavior," the Supreme Court has noted that "[p]eer harassment, in particular," is less likely to breach Title IX's guarantee of equal access to education than is teacher-student harassment. Davis, 526 U.S. at 653.

Davis involved allegations that a fifth-grade female student was subjected to a prolonged pattern of sexual harassment by one of her classmates. Id. at 633. The alleged harassment consisted of the male student's attempts to touch her breasts and genital area, his vulgar statements to her such as "I want to get in bed with you" and "I want to feel your boobs," his placement of a door stop in his pants and proceeding to act in a sexually suggestive manner toward the female student, and the male student rubbing his body against the female student in a sexually suggestive manner. Id. at 633-34. The Supreme Court stated that "[d]amages are not available for simple acts of teasing and name-calling among school children, . . . even where these comments target differences in gender. Rather, in the context of student-on-student harassment, damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect." Id. at 652. In concluding that the plaintiff in Davis had stated an actionable student-on-student sexual harassment claim under Title IX, the Court found that the plaintiff's allegations supported the conclusion that the male student's misconduct "was severe, pervasive, and objectively offensive. The harassment was not only verbal; it included numerous acts of objectively offensive touching, and, indeed, [the male student]

ultimately pleaded guilty to criminal sexual misconduct." Id. at 653.

In GP, the Eleventh Circuit addressed whether the district court erred in granting summary judgment in favor of the school board in the face of allegations that a male student had pushed a female student, pulled her hair, knocked her books out of her hand, shook her chair as she stood on it to try to make her fall, and struck her in the face with a spiral notebook. 737 F. App'x at 911. Relying on the principles outlined in Davis, he Court concluded that "[t]his type of 'teasing, shoving, pushing, and gender-specific conduct' may well have been upsetting to [the female student], but it [did] not approach the level of 'objectively offensive' harassment that gives rise to Title IX damages." Id. at 914-15.[5]

In this case, the Court must determine whether Plaintiff has plausibly alleged harassment that was so severe, pervasive, and objectively offensive that it effectively denied M.T. the benefits of the education that Title IX is designed to protect. As noted

---

[5] The Court also found that the female student's failure to report the majority of the male student's conduct militated against finding it pervasive and severe, and that while the battery with the notebook was severe, it was a single incident unlikely to have the systemic effect of depriving the student victim of an educational benefit. Id. at 915. The Court also noted that because the female student was removed from the class with the offending student, their only contact after the battery involved brief sightings in the hallway that involved neither physical nor verbal conduct. Id.

*supra*, Plaintiff alleges that a male student repeatedly spread false rumors that M.T. had engaged in sexual intercourse with a number of different boys and that she had sent naked pictures of herself to male classmates. (Doc. 1 at ¶¶ 11, 15-16). He also "involved other students and had them participate in false malicious gossip." (Id. at ¶11). After Christmas break, the male student "started the rumors back up about M.T" by telling other students that she was having sex with someone, which caused a fight between two boys. (Id. at ¶16). Plaintiff alleges that the "bullying continued" when one boy told other boys he was beaten up because he slept with M.T. (Id. at ¶17). According to Plaintiff, M.T., who was previously a normal, confident, active, and happy child, suffered "severe physical/medical manifestations" and dropped out of school to become a home school student as a result of "the relentless and unchecked bullying[.]" (Id. at ¶¶ 17-19).

Considering these allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has not plausibly alleged that the behavior of M.T.'s fellow students was *so* severe, pervasive, and objectively offensive as to deny M.T. equal access to education. See Hawkins, 322 F.3d at 1288. There is no allegation that the harasser or any of the other offending students insulted, name-called, or teased M.T. directly. Also notably absent from Plaintiff's complaint are any allegations of threats, suggestive gestures, offensive touching, sexual propositions,

physical assault, or sexually-charged contact with M.T. *by any student*. Although Plaintiff alleges that unidentified other students were involved and participated in false gossip and rumors regarding M.T., the complaint identifies a single male student primarily responsible for creating and spreading rumors, rather than a widespread and pervasive campaign of harassment by a large group of students. The instances of sexually-based rumor-mongering occurring over a period of months (including a four-month gap between incidents), while no doubt offensive and humiliating, are more akin to the "simple acts of teasing and name-calling among school children" that courts have found not to rise to the level of actionable harassment. See Davis, 526 U.S. at 652; see also HB v. Monroe Woodbury Cent. Sch. Dist., 2012 U.S. Dist. LEXIS 141252, at *54-55, 2012 WL 4477552, at *17 (S.D.N.Y. Sept. 27, 2012) ("Plaintiffs have not plausibly pleaded that the Girls' bullying deprived LB of educational opportunities. . . . While they would like this Court to believe that Defendants left them with no choice but to remove LB from the School and enroll her in a private high school, it is simply not plausible that repeated instances of name-calling and threats and one shove and one fight over the course of two-plus months constituted behavior so 'severe, pervasive, and objectively offensive' that LB was effectively denied access to the School's resources and opportunities . . . . If liability were appropriate in these

circumstances, every time a student was subject to repeated name-calling by his or her callous peers, with an occasional eruption into physical contact causing no serious injury, parents would be entitled to pull their child out of public school and place him or her in private school at the school district's expense."); Moore v. Marion Cmty. Schs. Bd. of Educ., 2006 U.S. Dist. LEXIS 98928, at *20-21, 2006 WL 2051687, at *7 (N.D. Ind. July 19, 2006) ("What is present in this case is, in essence, a single incident with T.G. that spawned a series of rumors from other students about K.M. which, in turn, made her school life difficult and unpleasant. Unlike the more severe cases listed above, there is no evidence in this case of harassment or name-calling over a prolonged time frame and no evidence at all of physical contact or repeated sexually charged contact. Accordingly, the court concludes that the conduct alleged here is not sufficiently severe and pervasive so as to be actionable harassment under Title IX."); Sanches, 647 F.3d at 167 ("It makes no difference to our analysis that Sanches was sincerely upset, and we assume that she was. The standard is not subjective; instead it is whether the harassment was severe, pervasive, and objectively unreasonable. J.H.'s conduct may have been inappropriate and immature and may have hurt Sanches's feelings and embarrassed her, but it was not severe, pervasive, and objectively unreasonable."); Soriano v. Bd. of Educ. of City of New York, 2004 U.S. Dist. LEXIS 21529, at *20-21, 2004 WL 2397610,

at \*6 (E.D.N.Y. Oct. 27, 2004) ("Here, plaintiffs . . . have alleged two instances of sexual harassment by two different fourth-graders taking place nearly six months apart.  Both involved discrete encounters, one involving a boy touching Stephanie's vagina through her skirt, and the second involving a slap on her buttocks.  These are strikingly offensive acts indeed, but plaintiffs have failed to demonstrate that they rise to the level of pervasive harassment such that Stephanie was deprived of 'equal access to an institution's resources and opportunities.'") (quoting Davis, 526 U.S. at 651); Doe v. Madison Bd. of Educ., 2014 U.S. Dist. LEXIS 164754, at \*17-18, 2014 WL 6674928, at \*6 (D. Conn. Nov. 25, 2014) (finding that harassment which included an insult written on a bathroom wall, isolation from friends, and name-calling was not sufficient to support a Title IX claim because it "was objectively less serious than harassment held to be legally insufficient in other cases").  Accordingly, the Court recommends dismissal of Plaintiff's Title IX claim against the Board of Education for failure to plausibly allege severe, pervasive, and objectively offensive harassment that had the systemic effect of denying M.T. equal access to education.[6]  In so recommending, the

---

[6]     Defendants also argue that Plaintiff has failed to show that the Board of Education had actual knowledge of the alleged harassment.  (Doc. 9 at 9).  According to Defendants, Plaintiff's allegations that the assistant principal and principal of Bay Minette Middle School had knowledge of the rumors on August 28, 2016, and that the school's principal had knowledge of the rumor

discovered on September 5, 2016, fail to show that the Board of Education had actual knowledge of any severe, pervasive, and objectively offensive harassment. (Id. at 10). While the Court, as stated *supra*, agrees that Plaintiff has failed to plausibly allege sufficiently severe, pervasive, and objectively offensive harassment to support a Title IX peer harassment claim, the Court finds that Plaintiff has plausibly alleged that the Board of Education had actual notice of the alleged harassment. See Hill, 797 F.3d at 970 (stating that the second element of a Title IX student-on-student harassment claim is that "an 'appropriate person' must have actual knowledge of the alleged discrimination or harassment"). Although the "question of who is an appropriate person is 'necessarily a fact-based inquiry[,]'" the Eleventh Circuit has found that a school principal can be an "appropriate person" to receive Title IX actual notice. See Doe v. Sch. Bd. of Broward Cnty., Fla., 604 F.3d 1248, 1256-57 (11th Cir. 2010) (citation omitted). Accordingly, Defendants' motion to dismiss Plaintiff's Title IX claim against the Board of Education for failure to allege actual notice is due to be denied.

Defendants further contend that Plaintiff has failed to plausibly allege that the Board of Education acted with deliberate indifference to known acts of harassment and subjected M.T. to further discrimination. (Doc. 9 at 11). Defendants point out that Title IX does not require funding recipients to "remedy" peer harassment, but rather to merely "respond to known peer harassment in a manner that is not clearly unreasonable." (Id.) (quoting Davis, 526 U.S. at 648-49). However, Plaintiff has alleged that the school took no corrective action in response to at least two reported and/or admitted instances of a student spreading false and malicious sexual rumors about M.T. (Doc. 1 at ¶¶ 14-17). Based on these allegations, the Court cannot conclude that Plaintiff has failed to plausibly allege that the Board of Education acted with deliberate indifference. Thus, Defendant's motion to dismiss Plaintiff's Title IX claim against the Board of Education on this basis is due to be denied.

Finally, Defendants argue that Plaintiff's claim for punitive damages must be dismissed because punitive damages are not available in a Title IX action. (Doc. 9 at 13). Plaintiff responds to this argument merely by stating "that punitive damages are available and due to be granted, upon trial by jury." (Doc. 19 at 1). However, at least one district court in this Circuit has held that "punitive damages are not available against a school district for violations of Title IX." See Bullard v. DeKalb Cnty. Sch. Dist., 2006 U.S. Dist. LEXIS 103144, at *11, 2006 WL 8432670, at

undersigned in no way condones the obnoxious conduct alleged in Plaintiff's complaint.

## IV.   CONCLUSION

For the reasons set forth above, the undersigned RECOMMENDS that Defendants Eddie Tyler, Baldwin County Board of Education, Cecil Christenberry, Shannon Cauley, and David Cox's motions to dismiss Plaintiff's Title IX claim for failure to state a claim upon which relief can be granted (Docs. 6, 8) be **GRANTED**, as set forth above.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  See 28 U.S.C. § 636(b)(1);

---

*4 (N.D. Ga. Feb. 9, 2006) (citing Hart v. Paint Valley Local Sch. Dist., 2002 U.S. Dist. LEXIS 25720, at *56-57, 2002 WL 31951264, at *16 (S.D. Ohio Nov. 15, 2002); Hooper v. North Carolina, 379 F. Supp. 2d 804, 811 (M.D.N.C. 2005) (holding that the plaintiff "may not assert a claim for punitive damages under Title VI, Title VII or Title IX")); see also Mercer v. Duke Univ., 50 F. App'x 643, 644 (4th Cir. 2002) ("[P]unitive damages are not available for private actions brought to enforce Title IX.").  Thus, to the extent Plaintiff seeks punitive damages against the Board of Education under Title IX, Defendants' motion to dismiss said claim is due to be granted.

Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **25th** day of **June, 2019.**

                                                **/s/ SONJA F. BIVINS**
                                        **UNITED STATES MAGISTRATE JUDGE**